UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANCH BANKING AND TRUST
COMPANY,

    Plaintiff,

vs.

MELVIN L. STEVENS, JR., SECURITY
FINANCIAL ENTERPRISES, INC.,
BROWNS GYMNASTICS OF WINTER
PARK, INC., d/b/a RJC PROPERTIES,
SILVER LAKES WEST HOMEOWNERS              Case No. 6:16-01447-CEM-KRS
ASSOCIATION, INC., THE WEKIVA
HUNT CLUB COMMUNITY
ASSOCIATION, INC., THE CROSSINGS
MASTER COMMUNITY ASSOCIATION,
INC., CALVIN JACK MEEKS, ROSE M.
ELLIS, ELAVON, INC. f/k/a NOVA
INFORMATION SYSTEMS, REGIONS
BANK, CAPITAL ONE BANK (USA) NA,
KAREN COOPER, MARK COOPER,
DILLON TYLER, BRENDA
CICCARELLO, and SALVATORE
CICCARELLO,

    Defendants.

_____/

## AMENDED VERIFIED COMPLAINT

The plaintiff, **BRANCH BANKING AND TRUST COMPANY** ("BB&T"), by and

through its undersigned counsel, sues the defendants, **MELVIN L. STEVENS, JR.**

("Borrower"), SECURITY FINANCIAL ENTERPRISES, INC. ("Security Financial"),

BROWNS GYMNASTICS OF WINTER PARK, INC. d/b/a RJC PROPERTIES

("Browns"), SILVER LAKES WEST HOMEOWNERS ASSOCIATION, INC. ("Silver

Lakes"), THE WEKIVA HUNT CLUB COMMUNITY ASSOCATION, INC. ("Wekiva"),

1

THE CROSSINGS MASTER COMMUNITY ASSOCIATION, INC. ("Crossings"), CALVIN JACK MEEKS ("Meeks"), ROSE M. ELLIS ("Ellis"), ELAVON, INC. f/k/a NOVA INFORMATION SYSTEMS ("Elavon"), REGIONS BANK ("Regions"), CAPITAL ONE BANK (USA) NA, KAREN COOPER, MARK COOPER, DILLON TYLER, BRENDA CICCARELLO, and SALVATORE CICCARELLO, and alleges:

## JURISDICTION, VENUE, AND PARTIES

1.    This is an action for damages exceeding $75,000.00, exclusive of costs, interest, and attorney's fees and for the foreclosure of a mortgage on real property located in Seminole County, Florida.

2.    BB&T is a North Carolina state chartered bank authorized to conduct business in the State of Florida, with its principal business office in Winston-Salem, North Carolina. BB&T is a citizen of and is domiciled in North Carolina.

3.    Stevens is a resident of and domiciled in Seminole County, Florida.

4.    Security Financial is an administratively dissolved Florida corporation which had its principal business office in Altamonte Springs, Florida.   Security Financial is a citizen of and is domiciled in Florida.

5.    Browns is a Florida corporation with its principal office in Winter Park, Florida. Browns is a citizen of and is domiciled in Florida.

6.    Silver Lakes is a Florida corporation with its principal office in Longwood, Florida.   Silver lakes is a citizen of and is domiciled in Florida.

7.    Wekiva is a Florida corporation with its principal office in Longwood, Florida. Wekiva is a citizen of and is domiciled in Florida.

2

8.     Crossings is a Florida corporation with its principal office in Longwood, Florida. Crossings is a citizen of and is domiciled in Florida.

9.     Meeks is a resident of and domiciled in Lake County, Florida.

10.    Ellis is a resident of and domiciled in Seminole County, Florida.

11.    Regions is an Alabama state chartered bank with its principal office in Birmingham, Alabama.  Regions is a citizen of and is domiciled in Alabama.  This court has personal jurisdiction over Regions because it claims an interest in the subject real estate by virtue of a judgment lien it recorded in Seminole County, Florida.

12.    Capital One is a national banking association with its main corporate office located in McClean Virginia.  Capital One is a citizen of and is domiciled in Virginia.  This court has personal jurisdiction over Capital One because it claims an interest in the subject real estate by virtue of a judgment lien it recorded in Seminole County, Florida.

13.    Karen Cooper and Mark Cooper reside at the real property subject to this foreclosure claim located at 129 Habersham Drive, Longwood, Florida.  Karen Cooper and Mark Cooper are residents of and domiciled in Seminole County, Florida.

14.    Dillon Tyler resides at the real property subject to this foreclosure claim located at 323 E. Notre Dame Drive, Altamonte Springs, Florida.  Dillon Tyler is a resident of and domiciled in Seminole County, Florida.

15.    Brenda Ciccarello and Salvatore Ciccarello reside at the real property subject to this foreclosure claim located at 724 Silversmith Circle, Lake Mary, Florida.  Brenda Ciccarello and Salvatore Ciccarello are residents of and domiciled in Florida.

16.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because: (a) the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and

attorneys' fees, and (b) there is complete diversity of citizenship between BB&T and the defendants.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the real property subject to the foreclosure claim is situated in this district.

## GENERAL ALLEGATIONS

18.     On or about October 19, 1999, Stevens and Security Financial executed and delivered to Colonial Bank a Commercial Promissory Note and Security Agreement in the principal amount of $225,000 (the "1999 Note").   A true and authentic copy of the 1999 Note is attached as **Exhibit A.**

19.     On or about June 12, 2001, Stevens and Security Financial executed and delivered to Colonial Bank a renewal promissory note which renewed the 1999 Note and increased the principal amount to $625,000 (the "2001 Note").   A true and authentic copy of the 2001 Note is attached as **Exhibit B.**

20.     At the time of the execution of the 2001 Note, Stevens owned the following described properties located in Seminole County, Florida (the "Properties"):

> PARCEL 1: LOT 44, SILVER LAKES WEST AT THE CROSSINGS, UNIT ONE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 34, PAGES 57 AND 58, PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA;

> PARCEL 2: LOT 15, BLOCK 3, WEATHERSFIELD FIRST ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 12, PAGES 66 AND 67, PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA;

> and

> PARCEL 3: LOT 15, WEKIVA HILLS, SECTION SIX, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN

4

PLAT BOOK 21, PAGES 24 AND 25, PUBLIC RECORDS OF
SEMINOLE COUNTY, FLORIDA.

21.     On or about June 12, 2001, as security for the 2001 Note, Stevens executed a

Mortgage on the Properties in favor of Colonial Bank.  The Mortgage was recorded at Official

Records Book 4146, Page 354, of the Official Records of Seminole County, Florida.  A true and

authentic copy of the Mortgage is attached as **Exhibit C.**

22.     On or about June 14, 2002, Stevens and Security Financial executed another

renewal note payable to Colonial Bank which increased the principal amount to $650,000.00 (the

"2002 Note").  A true and authentic copy of the 2002 Note is attached as **Exhibit D.**

23.     On or about March 6, 2007, Stevens and Security Financial executed a Renewal

Revolving Line of Credit Promissory Note payable to Colonial Bank, N.A. f/k/a Colonial Bank

which renewed the 2002 Note and increased the principal amount to $1,000,000.00 (the "Note").

A true and authentic copy of the Note is attached as **Exhibit E.**

24.     On or about March 6, 2007, Stevens executed a Notice of Future Advance

Mortgage and Note Modification, and Renewal Agreement, increasing the maximum amount of

the lien of the Mortgage to $1,000,000.00 in accordance with the Note (the "Mortgage

Modification").  The Mortgage Modification was recorded at Official Records Book 6640, Page

1455, of the Official Records of Seminole County, Florida.  A true and authentic copy of the

Mortgage Modification is attached hereto as **Exhibit F.**   The Mortgage as modified by the

Mortgage Modification is referred to as the "Mortgage."

25.     Effective June 10, 2008, Colonial Bank, N.A., converted its corporate structure to

an Alabama charted bank under the name Colonial Bank.   A true and authentic copy of

Certificate of Approval to Convert to a State Banking Corporation is attached as **Exhibit G.**

26.     On August 14, 2009, the Federal Deposit Insurance Corporation (the "FDIC") was appointed by the Alabama Superintendent of Banks for the State of Alabama as receiver to liquidate and distribute the assets of Colonial Bank, and, on this date, BB&T and the FDIC entered into a Purchase and Assumption Agreement whereby BB&T purchased and acquired from the FDIC Colonial Bank's loans, including the loan represented by the Note and Mortgage. The Purchase and Assumption Agreement is a voluminous document that will be produced upon request and which is available on line at https://www.fdic.gov/bank/individual/failed/colonial-al_P_and_A.pdf.

27.     To further evidence BB&T's purchase of Colonial Bank's loans, the FDIC executed an Assignment of Security Instruments and Other Loan Documents (the "Assignment") which was recorded in Seminole County, Florida.   A true and authentic copy of the Assignment is attached as **Exhibit H.**

28.     BB&T is the owner of the Note and Mortgage pursuant to the asset acquisition from the FDIC and is the party entitled to enforce the Note and Mortgage.

29.     Pursuant to deeds recorded on November 30, 2015, Stevens has transferred title to the Properties to 3 MMM Holdings.  The Properties are currently owned by Browns.

## COUNT I:   LOST NOTE

30.     BB&T realleges paragraphs 18 through 29 of the General Allegations.

31.     Stevens and Security Financial defaulted under the Note by failing to make the required monthly interest payments from June, 2009, through July, 2016.

32.     By letter dated April 25, 2016 (the "Cure Letter"), BB&T demanded that Stevens cure the payment default on or before May 31, 2016.   A true and authentic copy of the Cure Letter is attached as **Exhibit I.**

33.     Stevens did not cure the payment default on or before May 31, 2016, or at any time.

34.     As a result of Stevens' failure to cure the payment default, by letter dated June 3, 2016 (the "Acceleration Letter"), BB&T advised Stevens and Security Financial that it had accelerated payment of the indebtedness owing under the Note and demanded full payment of the loan balance owing by July 12, 2016.   A true and authentic copy of the Acceleration Letter is attached as **Exhibit J.**

35.     Additionally, the Note is payable on demand.  Pursuant to the Acceleration Letter, BB&T informed Stevens that the Note was payable on demand and demanded payment of the loan balance by July 12, 2016.

36.     Finally, BB&T advised Stevens that he had breached paragraph 17 of the Mortgage by transferring the Properties to 3 MMM Holdings, and as a result of this breach, BB&T demanded payment of the loan balance by July 12, 2016.

37.     As a result of the demand and defaults of the Note and Mortgage, BB&T is entitled to recover the full loan balance from Stevens and Security First.

38.     As of June 3, 2016, Stevens and Security First owed B&T the principal of $999,965.75, interest of $321,841.23, real estate taxes advanced of $19,186.37, forced place insurance of $21,411.41, for a total of $1,362,404.76, plus interest accruing at the contract rate of $122.95 per day.

39.     The original Note was lost either by Colonial Bank prior to the acquisition of the Note by BB&T from the FDIC or was lost by BB&T subsequent to the acquisition.

40.     If the original Note was lost by Colonial Bank prior to the acquisition of the Note by BB&T, then BB&T acquired Colonial Bank's right to enforce the Lost Note pursuant to the asset acquisition from the FDIC.

41.     Either Colonial Bank or BB&T was in possession of the original Note and was entitled to enforce the Note when the loss of possession occurred.

42.     The loss of possession of the original Note was not the result of a transfer by Colonial Bank (other than the transfer from the FDIC to BB&T) and was not the result of a transfer by BBB&T.

43.     The loss of possession of the original Note was not the result of a lawful seizure.

44.     BB&T cannot reasonably obtain possession of the original of the Note because its whereabouts cannot be determined.  The Note is not in the custody or control of BB&T.

45.     BB&T agrees to the entry of a final judgment requiring it to indemnify and hold harmless the obligors of the Note by reason of a claim by another person/entity attempting to enforce the lost Note.

46.     In a prior lawsuit between BB&T and Stevens and First Security, the Circuit Court of Jackson County, Florida, entered an Order concluding that BB&T was the owner of the Note and Mortgage and was entitled to enforce the Lost Note.

47.     Pursuant to the terms of the Note, BB&T is entitled to recover its attorney's fees incurred in this lawsuit.

48.     BB&T has retained The Rosenthal Law Firm, P.A., to represent it in this action and is obligated to pay a reasonable fee for services rendered on its behalf.

49.     All conditions precedent to BB&T's right to bring this claim have occurred or have been performed.

WHEREFORE, BB&T demands a judgment against Stevens and First Security, jointly and severally, for damages, costs, interest, and attorney's fees.

## COUNT II:  FORECLOSURE

50.    BB&T realleges paragraphs 18 through 29 of the General Allegations and paragraphs 31 through 46 of Count I.

51.    As a result of the defaults of the Note and Mortgage, BB&T is entitled to foreclose the Mortgage.

52.    Browns claims or may claim an interest in the Properties pursuant to a deed recorded at OR Book 8604, Page 34, Public Records of Seminole County, Florida.

53.    Browns' interest in the Property, if any, is subordinate to BB&T's interest pursuant to the Mortgage.

54.    Silver Lakes claims or may claim an interest in the Properties pursuant to potential, unrecorded liens.

55.    The interest of Silver Lakes, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

56.    Wekiva claims or may claim an interest in the Properties pursuant to potential, unrecorded liens.

57.    The interest of Wekiva, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

58.    The Crossings claims or may claim an interest in the Properties pursuant to potential, unrecorded liens.

59.    The interest of the Crossings, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

60.     Meeks claims or may claim an interest in the Properties pursuant to a judgment recorded at OR Book 7156, Page 329, Public Records of Seminole County, Florida, or under some other claim or right.

61.     The interest of Meeks, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

62.     Ellis claims or may claim an interest in the Properties pursuant to a judgment recorded at OR Book 7321, Page 887, Public Records of Seminole County, Florida, or under some other claim or right.

63.     The interest of Ellis, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

64.     Elavon claims or may claim an interest in the Properties pursuant to a judgment recorded at OR Book 7542, Page 1220 and Book 7631, Page 1047, Public Records of Seminole County, Florida, or under some other claim or right.

65.     The interest of Elavon, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

66.     Regions claims or may claim an interest in the Properties pursuant to a judgment recorded at OR Book 8224, Page 664, Public Records of Seminole County, Florida, or under some other claim or right.

67.     The interest of Regions, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

68.     Capital One claims or may claim an interest in the Properties pursuant to a judgment recorded at OR Book 7239, Page 612 and Book 7300, Page 1439, Public Records of Seminole County, Florida, or under some other claim or right.

69.     The interest of Capital One, if any, in the Properties is subordinate to BB&T's interest pursuant to the Mortgage.

70.     Karen Cooper and Mark Cooper claim an interest in the Properties because they reside at 129 Habersham Drive, Longwood, Florida, pursuant to an unrecorded lease agreement.

71.     The interests of Karen Cooper and Mark Cooper in the Properties, if any, is subordinate to BB&T's interest pursuant to the Mortgage.

72.     Mark Cooper claims an interest in the Properties because they reside at 323 E. Notre Dame Drive, Altamonte Springs, Florida, pursuant to an unrecorded lease agreement.

73.     The interests of Mark Cooper in the Properties, if any, is subordinate to BB&T's interest pursuant to the Mortgage.

74.     Brenda Ciccarello and Salvatore Ciccarello claim an interest in the Properties because reside at 724 Silversmith Circle, Lake Mary, Florida.

75.     The interests of Brenda Ciccarello and Salvatore Ciccarello in the Properties, if any, is subordinate to BB&T's interest pursuant to the Mortgage.

76.     Pursuant to the terms of the Mortgage, BB&T is entitled to recover from Stevens its attorneys' fees incurred in this action.

77.     BB&T has retained The Rosenthal Law Firm, P.A., to represent it in this action and is obligated to pay a reasonable fee for services rendered on its behalf.

78.     All conditions precedent to BB&T's right to bring this claim have occurred or have been performed.

**WHEREFORE**, BB&T prays for a judgment of foreclosure with the determination that the Mortgage constitutes a first lien on the Properties and ordering a sale of the Properties, and

11

for an award of costs, attorneys' fees, and any such other and further relief that the Court deems

appropriate, including a deficiency judgment and writs of possession.

/s/ Jason A. Rosenthal
Jason A. Rosenthal, Trial Counsel
Florida Bar No. 0009482
**The Rosenthal Law Firm, P.A.**
976 Lake Baldwin Lane, Ste. 103
Orlando, FL 32814
jrosenthal@therosenthallaw.com
service@therosenthallaw.com
Phone 407.488.1220
Fax 407.488.1228
Attorneys for BB&T

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint in

the matter of *Branch Banking and Trust Company v. Melvin L Stevens, Jr., et. al.*, and the facts

alleged therein are true and correct to the best of my knowledge and belief.

Tara Bromirski
Senior Vice President
Branch Banking and Trust Company

The foregoing was sworn to (or affirmed) and subscribed before me this 12th day of
October, 2016, by Tara Bromirski

{Notary Seal}

Signature of Notary

Berecia M. Hendricks
State of Florida
MY COMMISSION # FF 4177
Expires: April 6, 2017

12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was electronically filed on October 20, 2016 and that an electronic copy will be furnished to counsel of record.

/s/ Jason A. Rosenthal
Jason A. Rosenthal, Esq.
Florida Bar No. 0009482
**The Rosenthal Law Firm, P.A.**
976 Lake Baldwin Lane, Suite 103
Orlando, FL 32801
Tel:  407-488-1220; Fax:  407-488-1228
jrosenthal@therosenthallaw.com
service@therosenthallaw.com
Attorneys for BB&T

COMMERCIAL PROMISSORY NOTE AND SECURITY AGREEMENT

MELVIN L STEVENS JR
AND SECURITY FINANCIAL ENTERPRISES INC
222 S WESTMONTE DRIVE, SUITE 103
ALTAMONTE SPRINGS FL, 32714

COLONIAL BANK
ALTAMONTE SPRINGS
919 WEST STATE ROAD 436
ALTAMONTE SPRGS FL 32714

| NOTE NUMBER | ORIGINATION DATE | MATURITY DATE | OFFICE | ACCOUNT # | RENEWAL OF |
|---|---|---|---|---|---|
| 00000002 | Oct. 19, 1999 | On Demand | 002 | 6 | |

For value received, on or before the Maturity Date, the undersigned Borrower promises to pay the principal amount together with interest and any other charges, including interest charges, to the order of the Lender at its office at the address noted above or within the lawful money of the United States of America. Two undersigned further agrees to the terms below and on page two of this Note and Security Agreement. Words numbers or phrases preceded by a ☐ are applicable only if the ☒ is marked

PRINCIPAL AMOUNT   Two Hundred Twenty Five Thousand And 00/100
Dollars                                                                        $   225,000.00

PAYMENT SCHEDULE: ☐ In _____ Installments of $ _____   ☐ plus interest   ☐ including interest
☒ Interest only  starting  November 19, 1999                            and payable ☐ monthly  ☐ quarterly
☒ Interest, principal and other charges due at Maturity Date
☐ other payment schedule:

This loan is subject to ☐ a fixed interest rate of _____  ☒ a variable simple interest rate, which is
☒ 0.250 % greater than    ☐ equal to    _____ % per annum,    ☐ less than the following Index:
Colonial Bank Base Rate

| Initial Variable Simple Interest Rate | Present Variable Index Rate | Maximum Interest Rate | Minimum Interest Rate | Interest Rate Changes (if Variable) |
|---|---|---|---|---|
| 8.500 % | 8.250 % | 2.000 % | 18.000 % | When Index Changes |

Interest may be calculated on the unpaid balance for the actual days outstanding on a 360/360 day basis or any other per diem resulting in a lesser interest factor.
DEFAULT RATE:  If in default the interest rate shall be:  ☒ 18.000 % per annum  ☐ % in excess of the Index.
LATE CHARGES:  If the loan is more than _____  9 days late in making any payment, in addition to such payment, Borrower will pay a late charge of:
☐ the greater of _____ ☐ or _____ % of the amount in default _____  ☐ the lesser of _____ ☒ 5.00 % of the payment in default
PAYABLE ON DEMAND:  ☒ Payment is due upon demand   ☐ Payment if the Lender demands but in any event not later than Maturity Date.
LINE OF CREDIT:  ☒ If this Note is not in default, Lender may make advances and re-advances from and reloan on a continuing basis up to the Principal Amount.

ADDITIONAL NOTE PROVISIONS:   Intangible Tax: $450.00

SPECIFIC COLLATERAL / SPECIAL SECURITY AGREEMENT:
A SECOND MORTGAGE ON THE PROPERTY LOCATED AT 105 W GREENTREE LANE; LAKE
MARY, FLORIDA FURTHER DESCRIBED IN THE MORTGAGE OF EVEN DATE HEREWITH.

Florida Documentary Stamp Tax required by law in the amount of $  787.50  has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No.
63001520-78-002

IN WITNESS WHEREOF, the Borrower has executed this Note and Security Agreement on the date and year shown below

MELVIN L STEVENS

SECURITY FINANCIAL ENTERPRISES INC

EXHIBIT

"A"

## ADDITIONAL SECURITY AGREEMENT PROVISIONS

NAME AND ADDRESS OF BORROWER(S) ("I")

MELVIN L STEVENSER
AND SECURITY FINANCIAL & RPRISES INC
222 S WESTMONTE DR
SUITE 103
ALTAMONTE SPRINGS FL, 32714

NAME AND ADDRESS OF LENDER OR ITS AGENT ("You")

COLONIAL
ALTAMONT  PRINGS
919 WEST STATE ROAD 436
ALTAMONTE SPRGS FL 32714

| NOTE NUMBER | TRANSACTION DATE | MATURITY DATE | OFFICE | ACCOUNT # | RENEWAL OF |
|---|---|---|---|---|---|
| 00000002 | Jun. 12, 2001 | On Demand | 002 | | 00000002 |

For value received, on or before the Maturity Date, the undersigned Borrower promises to pay the principal amount, together with interest, and any other charges, including service charges, to the order of the Lender at its office at the address stated above or holder (all in lawful money of the United States of America. The undersigned further agrees to the terms below and on page two of this Note and Security Agreement. Words including are plurals prescribed by a [ ] are applicable only if the [ ] is marked.

PRINCIPAL AMOUNT

**Dollars**      Six Hundred Twenty Five Thousand And 00/100

$ 525,000.00

PAYMENT SCHEDULE:

[X] Interest only   starting July 12, 2001

[X] interest, principal and other charges due on Maturity Date

[ ] other payment schedule:

This loan is subject to [ ] a fixed interest rate of

[X] 0.500 % greater than    [ ] equal to

[X] a variable interest rate, which is

Colonial Bank Base Rate

| Initial Variable / Fixed Interest Rate | Current Variable Index Rate | Minimum Interest Rate | Maximum Interest Rate | Interest Rate Changes Due: |
|---|---|---|---|---|
| 7.500 % | 7.000 % | 2.000 % | 18.000 % | When Index Changes |

DEFAULT RATE:   If in default the interest rate shall be    [X] 18.000 % per annum,    [ ] % in excess of the index.

LATE CHARGE:   If Borrower is more than   9   days late in making any payment, Borrower will pay a late charge of:

[ ] the greater of    [ ] the greater of    [ ] an amount equal to $    or    [X] 5.000 % of the payment in default.

PAYABLE ON DEMAND:   [ ] Payment is due upon demand.   [X] Payment is due upon demand, but in any event, not later than Maturity Date.

[X] ADDITIONAL NOTE PROVISIONS:   Intangible Tax: $800.00
DOC TAX I/A/O 787.50 HAS BEEN PAID & AFFIXED TO THE NOTE I/A/O $225,000.00
DATED 10/19/99 AND DOC TAX I/A/O $1,400.00 ON THE PRINCIPAL INCREASE OF
$400,000.00 IS BEING REMITTED DIRECTLY TO THE DEPARTMENT OF REVENUE.

SPECIFIC COLLATERAL / SPECIAL SECURITY AGREEMENT PROVISIONS:
(1) FIRST MORTGAGE AND (8) SECOND MORTGAGES ON RESIDENTIAL PROPERTIES
FURTHER DESCRIBED IN MORTGAGES OF EVEN DATE HEREWITH.

Florida Documentary Stamp Tax imposed by law in the amount of $ 1,400.00    has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No.
63-0015526-78-002

IN WITNESS WHEREOF, the Borrower has executed this Note and Security Agreement on the date and year shown above.

MELVIN L. STEVENS

SECURITY FINANCIAL ENTERPRISES INC

MELVIN L STEVENS JR. PRESIDENT

**EXHIBIT "B"**

## ADDITIONAL SECURITY AGREEMENT PROVISIONS



MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 04146 PG 0354
CLERK'S # 2001733698
RECORDED 08/10/2001 02:50:46 PM
MTG DOC TAX 612.50
INTANG TAX 350.00
RECORDING FEES 37.50
RECORDED BY J Eckenroth

(Space Above This Line For Recording Data)

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on   June 12, 2001
The mortgagor is MELVIN L STEVENS JR A SINGLE MAN

This Security Instrument is given to                                                                                          ("Borrower").
COLONIAL BANK
which is organized and existing under the laws of Alabama                              , and whose address is
919 WEST STATE ROAD 436
ALTAMONTE SPRGS, FL 32714
("Lender"). Borrower owes Lender the principal sum of

   One Hundred Seventy Five Thousand                                              Dollars (U.S. $  175,000.00          ).
This debt is evidenced by Borrower's note, consumer loan agreement, or similar writing dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on                                                        . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the
Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage,
grant and convey to Lender the following described property located in       SEMINOLE

                                                                                                                                      County, Florida:

   **See Attached Addendum

which has the address of

Florida                                         (Street)                              ("Property Address");                        (City)
                   (Zip Code)

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a
part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security
Instrument as the "Property."

By initialing, I acknowledge this is page 1 of 6
of the Mortgage.

© Copyright Compliance Systems, Inc. 1993, 1994, 1995                                    Initials        Initials        Initials
*ECM-1117111-1050-1 LTD    Page 1 of 6                                           Compliance Systems, Inc.
                                                                        To Order Call 800-968-8522 Fax 816-956-1868

Exhibit
"C"

BBT-0122



FILE NUM 2001733698
OR BOOK 04146    PAGE 0355

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** At Lender's request and subject to applicable law, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. §2601 et seq. ("RESPA"), unless another applicable law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

| By initialing, I acknowledge this is page 2 of 6 of the Mortgage. | | | | |
|---|---|---|---|---|
| © Copyright Compliance Systems, Inc. 1992 1994, 1991 | Initials | Initials | Initials | Initials |
| ITEM 111FL2  (9501)  LE2    Page 2 of 6 | | Compliance Systems, Inc. To Order Call 800 968 8522 fax 616 956 1868 | | |

BBT-0123



FILE NUM 2001733698
OR BOOK 04146    PAGE 0356

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

| By initialing, I acknowledge this is page 3 of 6 of the Mortgage. | | | | |
|---|---|---|---|---|
| | Initials | Initials | Initials | Initials |

© Copyright Compliance Systems, Inc. 1993, 1994, 1995
ITEM 3127FL3 (9507) LED   Page 3 of 6

Compliance Systems, Inc.
To Order Call: 800 968 8522 Fax 616 956 1868

BBT-0124



FILE NUM 2001733698
OR BOOK 04146   PAGE 0357

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

---

By initialing, I acknowledge this is page 4 of 6
of the Mortgage.

Initials _____  Initials _____  Initials _____  Initials _____

© Copyright Compliance Systems, Inc. 1993, 1994, 1996
ITEM 1717CL4 (9503) (C)   Page 4 of 6
Compliance Systems, Inc.
To Order: Call 800-968-8522 Fax 616-956-1868

BBT-0125



FILE NUM 2001723698
OR B 04146   PAGE 0358

17.  **Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) unless the Note shows that Borrower's loan is assumable, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  If the Note shows that Borrower's loan is assumable, Borrower must obtain Lender's written permission for an assumption and follow any other requirements of Lender related to an assumption.  If Borrower does not do so, Lender may require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18.  **Borrower's Right to Reinstate.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:  (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.  Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19.  **Sale of Note; Change of Loan Servicer.**  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law.

20.  **Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21.  **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default;  (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding, and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

By initialing, I acknowledge this is page 5 of 6
of the Mortgage.

© Copyright Compliance Systems, Inc. 1993, 1994, 1996
ITEM 111111L6  (951) LE0   Page 5 of 8

Compliance Systems, Inc.
To Order Call 800 968 8522  Fax 616 956 1868

Initials          Initials          Initials          Initials



FILE NUM 2001733698
OR BOOK 04146   PAGE 0359

22.  **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23.  **Attorneys' Fees.**  As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

24.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Karen Taylor_                                         _Kim Sullivan_
Karen Taylor                                           Kim Sullivan

_[signature]_
_____(Seal)              _____(Seal)
MELVIN L STEVENS JR                    -Borrower                                            -Borrower
A Single Man

_____(Seal)              _____(Seal)
                                       -Borrower                                            -Borrower

_____(Seal)              _____(Seal)
                                       -Borrower                                            -Borrower

STATE OF FLORIDA,
COUNTY OF  Seminole

The foregoing instrument was acknowledged before me this  13th  day of  July  2001
                                                                          (date)
by  Melvin L. Stevens Jr.
    (name of person acknowledging)

who is personally known to me or who has produced _____ as identification.
                                                   (type of identification)

My Commission expires:

(Seal)                                                 _Kimberly Sullivan_
                                                        Notary Public

KIMBERLY SULLIVAN
MY COMMISSION # CC 740305
EXPIRES: May 22, 2002
Bonded Thru Notary Public Underwriters

This instrument was prepared by:  KIM SULLIVAN          After recording return to:
         COLONIAL BANK                                      COLONIAL BANK
         919 W STATE RD 436                                 919 W STATE RD 436
         ALTAMONTE SPRINGS, FL 32714                        ALTAMONTE SPRINGS, FL 32714
                                                            ATT: KIM SULLIVAN

© Copyright Compliance Systems, Inc. 1993, 1998, 1996              Compliance Systems, Inc.
ITEM 11191LF (9601) (TC)   Page 6 of 6                              To Order: Call 800 968 8522  Fax 616 956 1868

BBT-0127

ADDENDUM
LOT 728, WEKIVA HUNT CLUB, FOX HUNT, SECTION 3, ACCORDING TO
THE PLAT THEREOF AS RECORDED IN PLAT BOOK 18, PAGES 33-92,
OF THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA.

which has the address of   206 ATHERSTONE COURT                     LONGWOOD
                                        (Street)                        (City)

Florida        32779                              ("Property Address");
                (Zip Code)

LOT 18, WEKIVA COVE PHASE TWO, ACCORDING TO THE PLAT THEREOF
AS RECORDED IN PLAT BOOK 25, PAGE 27, PUBLIC RECORDS OF
SEMINOLE COUNTY, FLORIDA.

which has the address of   299 TORPOINT GATE                        LAKE MARY
                                        (Street)                        (City)

Florida        32746                              ("Property Address");
                (Zip Code)

LOT 44, SILVER LAKES WEST AT THE CROSSINGS, UNIT ONE,
ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 34,
PAGES 57 AND 58, OF THE PUBLIC RECORDS OF SEMINOLE COUNTY,
FLORIDA.

which has the address of   724 SILVERSMITH CIR                     LAKE MARY
                                        (Street)                        (City)

Florida        32746                              ("Property Address");
                (Zip Code)

LOT 15, BLOCK 3, WEATHERSFIELD FIRST ADDITION, ACCORDING TO
THE PLAT THEREOF AS RECORDED IN PLAT BOOK 14, PAGES 66 & 67,
OF THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA.  SUBJECT
TO RESTRICTIONS IN OFFICIAL RECORDS BOOK 208, PAGE 424;
OFFICIAL RECORDS BOOK 222, PAGE 244; OFFICIAL RECORDS BOOK
255, PAGE 483-492; AND IN OFFICIAL RECORDS BOOK 256, PAGE
492, AND AN EASEMENT OF 7 FEET FOR UTILITY PURPOSES ON THE
REAR, SAID REFERENCE TO RESTRICTIONS AND EASEMENTS SHALL NOT
OPERATE TO REIMPOSE THE SAME.

which has the address of   323 NOTRE DAME DRIVE                     ALTAMONTE SPRINGS
                                        (Street)                        (City)

Florida        32714                              ("Property Address");
                (Zip Code)

LOT 15, WEKIVA HILLS, SECTION SIX, ACCORDING TO THE PLAT
THEREOF AS RECORDED IN PLAT BOOK 21, PAGES 24 AND 25, PUBLIC
RECORDS OF SEMINOLE COUNTY, FLORIDA.

which has the address of   129 HABERSHAM DR                        LONGWOOD
                                        (Street)                        (City)

Florida        32779                              ("Property Address");
                (Zip Code)

OR BOOK 04146   PAGE 0360

BBT-0128



OR BOOK 04146   PAGE 0361

Addendum

LOT 57, GREENWOOD LAKES, UNIT D-3, SECOND ADDITION, ACCORDING TO
THE PLAT THEREOF AS RECORDED IN PLAT BOOK 40, PAGES 78 AND 79, OF
THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA.

which has the address of 664 Birgham Place,   Lake Mary  Florida 32746



BBT-0129

MELVIN L STEVENS JR
AND SECURITY FINANCIAL ENTERPRISES INC
222 S WESTMONTE DR
SUITE 103
ALTAMONTE SPRINGS FL, 32714

COLON   BANK
ALTAMONTE SPRINGS
919 WEST STATE ROAD 4
ALTAMONTE SPRGS FL 3271

| | TRANSACTION DATE | MATURITY DATE | OFFICE | ACCOUNT # | RENEWAL OF |
|---|---|---|---|---|---|
| 0000 0002 | Jun. 14, 2002 | On Demand | 002 | | |

For value received, at or before the Maturity Date, the undersigned Borrower promises to pay the principal amount, together with interest...

**PRINCIPAL AMOUNT**   Six Hundred Fifty Thousand And 00/100   Dollars      $  650,000.00

PAYMENT SCHEDULE:

[X] Interest only   starting   July 14, 2002     [X] monthly  [ ] quarterly

[X] Interest, principal and other charges due on Maturity Date

[ ] allow payment schedule.

This loan is subject to   [ ] a fixed interest rate of     % per annum.   [X] a variable simple interest rate, which is    [X] greater than   [ ] equal to:   [ ] less than  the following index:

[X]  0.500 % greater than

Colonial Bank Base Rate

| Index Rate | Periodic Variable Index Rate | Maximum Interest Rate | Minimum Interest Rate | Interest Rate Changes Will Be Based |
|---|---|---|---|---|
| 5.250 % | 4.750 % | 5.250 % | 18.000 % | When Index Changes |

Interest may be calculated on the unpaid balance for the actual days outstanding on a 360/365 day basis resulting in a higher interest rate factor

DEFAULT RATE:   It is default the interest rate shall be:   [X]   18.000 % per annum.     [ ]    % in excess of the index

[ ]     days late in making any payment, in addition to such payment, Borrower will pay a late charge of:

LATE CHARGE:   If Borrower is more than

[ ] the lesser of     [ ]    or     [ ] the greater of    [X]  5.000 % of the payment in default.

[ ] an amount equal to

PAYABLE ON DEMAND:   [X] If this Note is not in default, Lender may make advances and readvances (lend and relend) as a continuing loan up to the Principal Amount ~ Revolving

LINE OF CREDIT...

[X] ADDITIONAL NOTE PROVISIONS:   Intangible Tax: $50.00
DOC TAX I/A/O 787.50 HAS BEEN PAID & AFFIXED TO NOTE I/A/O 225,000 DATED
10/19/99 & DOC TAX I/A/O 1,400 ON PRIN INCREASE 400,000 HAS BEEN PAID; DOC
TAX I/A/O 87.50 ON PRIN INCREASE OF 25,000 BEING REMITTED TO DEPT OF REV

SPECIFIC COLLATERAL/SPECIAL SECURITY AGREEMENT PROVISIONS of Collateral includes (Cross reference the document by recorded details)
       FIRST MORTGAGE AND (B) SECOND MORTGAGES ON RESIDENTIAL PROPERTIES
       FURTHER DESCRIBED IN MORTGAGES

Florida Documentary Stamp Tax required by law in the amount of $      87.50      has been paid to and paid directly to the Department of Revenue, Certificate of Registration No.   58015320-78-0

MELVIN L STEVENS JR.

_____
Date

By X _____

SECURITY FINANCIAL ENTERPRISES INC

By X _____

_____   MELVIN L. STEVENS JR., PRESIDENT   Date

EXHIBIT   "D"

## ADDITIONAL SECURITY AGREEMENT PROVISIONS

 

## RENEWAL REVOLVING LINE OF CREDIT
## PROMISSORY NOTE

$1,000,000.00

March 6, 2007
Orlando, Florida

FOR VALUE RECEIVED, the undersigned, MELVIN L. STEVENS, JR. and SECURITY FINANCIAL ENTERPRISES, INC., a Florida corporation, jointly and severally ("Maker") promise to pay to the order of COLONIAL BANK, N.A. (hereinafter called the "Bank" or, together with any other holder of this note, the "Holder") or order, at its place of business at 801 East State Road 434, Longwood, Florida 32750, or at such other place as the Holder of this Note may designate in writing, the principal sum of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00), together with interest thereon at the Interest Rate, in lawful money of the United States, which shall be legal tender in payment of all debts and dues, public and private, at the time of said payment, said principal and interest to be payable as set forth below.

1. INTEREST RATE.

(a) The Interest Rate shall be a floating rate (herein "Floating Rate") calculated at an annual rate equal to the COLONIAL BANK, N.A. Base Rate of Interest in effect from time to time calculated on a daily moving basis upon the principal balance hereof from time to time outstanding, but in no event to exceed the maximum rate allowed by Florida Law, as amended, or as preempted and prescribed from time to time by the Laws of the United States of America or any rule or regulation of any department or agency thereof. The Base Rate of Interest of COLONIAL BANK, N.A. shall be that rate of interest (but not necessarily the best or lowest rate charged borrowing customers of COLONIAL BANK, N.A.) described by it as its Base Rate of Interest, whether or not such rate shall be otherwise published, as such rate shall vary from time to time, and each adjustment shall be effective on the day the change occurs.

(b) Interest shall be calculated on the basis of a 360-day year, actual days elapsed, and each adjustment shall be effective on the day the change occurs.

2. MATURITY DATE. ON DEMAND.

3. PAYMENTS. Interest at the Interest Rate on the principal balance of the indebtedness outstanding from time to time shall be payable beginning on April 6, 2007, and shall be payable on the 6 day of each successive month thereafter until the Maturity Date at which time all unpaid principal and interest shall be payable in full.

4. MORTGAGE AND SECURITY AGREEMENT. As security for the payment of the indebtedness evidenced by this Note ("Liabilities"), the undersigned (among other things) has granted or has caused to be granted to Holder that certain Mortgage dated June 12, 2001 and recorded in Official Records Book 825, Page 988, encumbering and conveying real estate and property therein described and duly recorded among the public records of JACKSON County, Florida ("Mortgage One"), that certain Mortgage dated March 1, 2002 and recorded in Official Records Book 4367, Page 1117, encumbering and conveying real estate and property therein described and duly recorded among the public records of SEMINOLE County, Florida ("Mortgage Two"), and that certain Mortgage dated June 12, 2001 and recorded in Official Records Book 4146, Page 354, encumbering and conveying real estate and property therein described and duly recorded among the public records of SEMINOLE County, Florida ("Mortgage Three"). Holder is given a lien upon and a security interest in all property of the undersigned now or at any time hereafter in the possession of Holder in any capacity whatsoever, including but not limited to any balance or

THIS NOTE IS A RENEWAL PROMISSORY NOTE WHICH RENEWS A NOTE IN THE PRINCIPAL AMOUNT OF $650,000.00 UPON WHICH DOCUMENTARY STAMPS HAVE BEEN PAID AND INCLUDES AN ADDITIONAL $350,000.00 UPON WHICH DOCUMENTARY STAMPS ARE BEING PAID SIMULTANEOUSLY HEREWITH.

EXHIBIT

"E"

 

share of any deposit, certificate of deposit, trust or agency account, as security for the payment of this Note and the Holder is hereby authorized to apply, on or after maturity (whether by a acceleration or otherwise) to the payment of this debt any such funds or property in possession of the Holder belonging to each Obligor, in such order of application as Holder may from time to time elect, without advance notice.

5. DEFAULT RATE. This note and all sums due hereunder shall bear interest from the date when due (without any prior notice from Holder to Maker or any Obligor), whether by lapse of time or on acceleration, and also after any judgement which may be entered against any Obligor and in favor of Holder, at the Default Rate (as hereinafter defined) until paid. The Default Rate shall be a rate of interest equal to the highest rate allowed by law until paid.

6. INTEREST LIMITATION. Anything in this note, the Mortgage or any other agreements or arrangements with the undersigned in connection with the loan evidenced by this Note to the contrary notwithstanding, in no event shall the amount of interest due hereunder, together with all amounts reserved, charged, or taken by Holder as compensation for fees, services, or expenses incidental to the making, negotiation or collection of the loan evidenced hereby, which are deemed to be interest under applicable law, exceed the maximum rate of interest on the unpaid principal balance hereof allowed from time to time by applicable law. If any sum is collected in excess of the applicable maximum rate of interest, the excess sum collected shall be applied to reduce the principal debt or be refunded to Maker, at Holder's option.

7. CONSENT AND WAIVER. Each Obligor (which term shall mean and include each Borrower, Maker, Guarantor, and all others who may become liable for all or any part of the obligations evidenced and secured hereby), does hereby, jointly and severally: (a) consent to any forbearance or extension of the time or manner of payment hereof and to the release of all or any part of any security held by the Holder to secure payment of this Note and to the subordination of the lien of the mortgage and any other instrument of security securing this Note as to all or any part of the property encumbered thereby, all without notice to or consent of that party; (b) agree that no course of dealing or delay or omission or forbearance on the part of the Holder in exercising or enforcing any of its rights or remedies hereunder or under any instrument securing this Note shall impair or be prejudicial to any of the Holder's rights and remedies hereunder or to the enforcement hereof and that the Holder may extend, modify or postpone the time and manner of payment and performance of this Note and any instrument securing this Note, may grant forebearances and may release, wholly or partially, any security held by the Holder as security for this Note and release, partially or wholly, any person or party primarily or secondarily liable with respect to this Note, all without notice to or consent by any party primarily or secondarily liable hereunder and without thereby releasing, discharging or diminishing its rights and remedies against any other party primarily or secondarily liable hereunder; (c) waive notice of acceptance of this Note, notice of the occurence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, notice of dishonor and notice of protest and notices of any and all action at any time taken or omitted by the Holder in connection with this Note or any instrument securing this Note and waives all requirements necessary to hold that party to the liability of that party; (d) waive any "venue privilege" and/or "diversity of citizenship privilege" which they have now or have in the future, and do hereby specifically agree, notwithstanding the provision of any state or federal law to the contrary, that the venue for the enforcement, construction or interpretation of this note shall be the County Court, Circuit Court or Federal Court selected by the Holder hereof and they do hereby specifically waive the right to sue or be sued in the court of any other county in the State of Florida, any court in any other state or country or in any federal court, or in any state or federal administrative tribunal.

8. ATTORNEYS' FEES. All parties liable for the payment of this Note agree to pay the Holder in addition to the principal, premium and interest due and payable hereon, reasonable paralegal fees, attorneys' fees and costs, whether or not an action be brought, for the services of counsel employed after maturity or default to collect this Note or any principal or interest due hereunder, or to protect the security, if any, or enforce the performance of any other agreement contained in this Note or in any instrument of security executed in connection with the loan evidenced hereby, including, but not limited to costs, paralegal fees and attorneys' fees and costs on

 

any trial, or appellate proceedings, or in any proceedings under the United States Bankruptcy Code or in any post judgment proceedings.

9. EVENTS OF DEFAULT. The happening of any of the following events shall constitute a default or Event of Default hereunder: (a) failure of any Obligor to pay any principal, interest or any other sums required hereunder when due under this Note; or (b) a default or Event of Default shall occur in any instrument securing this Note or in any other instrument executed in connection with the loan evidenced hereby.

10. ACCELERATION. If a default or Event of Default shall occur hereunder and such default shall continue for ten (10) days then at the option of the Holder, the entire principal sum then remaining unpaid together with any premiums and accrued interest shall immediately become due and payable without notice or demand, and said principal and premiums shall bear interest from such date at the highest legal rate permitted by law, from time to time, to be charged by Holder, it being agreed that interest not paid when due shall, at the option of the Holder, draw interest at the rate provided for in this paragraph. Failure to exercise the above options shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. If this Note is payable upon demand, then no terms or provisions contained in this paragraph shall be deemed or interpreted to alter or abrogate the demand nature of this Note or the rights of Holder under a demand instrument.

11. OTHER REMEDIES. If a default or an Event of Default shall occur Holder shall have in addition to its remedies under the Mortgage, this Note, Loan Agreement, and/or any other instrument securing or executed in conjunction with the loan evidenced hereby and applicable law all the remedies of a secured party under the Uniform Commercial Code of the State of Florida and, without limiting the generality of the foregoing, Holder shall have the right, at its option, and without notice or demand, to declare the entire amount of this Note remaining unpaid, and all other liabilities selected by Holder, immediately due and payable, less any unearned interest or other charges and any rebates required by law (it being the intention hereof that under no circumstances shall Holder be entitled to receive at any time any charges not allowed or permitted by law or any interest in excess of the maximum allowed by law); to set off against this Note all money owed by Holder in any capacity to the undersigned or any guarantor hereof, whether or not due; and Holder shall be deemed to have exercised such right of setoff and to have made a charge against any such money immediately upon the occurrence of such default even though such charge is made or entered in the books of Holder subsequent thereto. Upon disposition of any collateral after the occurrence of any default, undersigned shall be and remain liable for any deficiency, and Holder shall account to undersigned for any surplus, but Holder shall have the right to apply all or any part of such surplus (or to hold the same as a reserve) against any and all other liabilities of undersigned to Holder.

12. FLORIDA LAW. This Note is executed under seal and constitutes a contract under the laws of the State of Florida, and shall be enforceable in a Court of competent jurisdiction in that State, regardless of in which State this Note is being executed.

13. HEADINGS. The headings of the paragraphs contained in this Note are for convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meaning of the parties hereto.

14. DOCUMENTARY STAMPS. Documentary stamps in the amount required by Florida Law have been purchased and affixed to the Mortgage of even date which secures this Note.

15. LATE CHARGE. The undersigned promises to pay to the Holder of this note a "late charge" not to exceed an amount equal to five per cent (5%) of any principal or interest which is not paid within ten (10) days from the due date thereof to cover the extra expense involved in handling delinquent payments. Collection or acceptance by Holder of such late charge shall not constitute a waiver of any remedies of Holder provided herein.

16. CROSS DEFAULT. A default under this Note shall be and constitute a default under any and all other notes or other evidence of indebtedness and any instruments of security therefor in which an Obligor is liable and of which the Holder is the Holder and a default under any other loan any Obligor has at anytime to Holder or any other lender shall be a default hereunder.

S:\CLIENTS\MC\Colonial Bank\1466 – Security Financial Enterprises, Inc\1466antn.wpd

3

17. MISCELLANEOUS.

(a) The term "Maker", as used herein, in every instance shall include the Maker's heirs, executors, administrators, successors, legal representatives and assigns, and shall denote the singular and/or plural, the masculine and/or feminine, and natural and/or artificial persons whenever and wherever the context so requires or admits.

(b) This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

All payments made on the indebtedness evidenced by this Note shall be applied first to repayment of monies paid or advanced by Holder on behalf of the Maker in accordance with the terms of the Mortgage securing this Note, and thereafter shall be applied to payment of accrued interest, and lastly to payment of principal.

The interest rate charged under this loan is authorized by Section 687.12, Florida Statutes and by Chapter 655, Florida Statutes and any applicable federal laws or regulations.

The principal balance hereof may be borrowed and re-borrowed from time to time during the term hereof but may not exceed at any one time an outstanding principal balance of $1,000,000.00. Bank's obligation to make advances under this Note shall terminate if a demand for payment is made under the Note or if a default under this Note or any other related loan document (the "Loan Documents") occurs, or in any event, on March ___, 2008 unless renewed or extended by Bank in writing upon such terms then satisfactory to Bank. As of the date of each proposed advance, Maker shall be deemed to represent that each representation made in the Loan Documents is true as of such date.

MAKER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE INCLUDING BUT NOT LIMITED TO ANY POST JUDGEMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE HOLDER MAKING THE LOAN OR EXTENSION OF CREDIT EVIDENCED BY THIS NOTE.

Address of Maker:
180 North Westmonte Drive
Altamonte Springs, Florida 32714

_____ (Initials)

SECURITY FINANCIAL ENTERPRISES, INC.,
a Florida corporation

By: _____
MELVIN L. STEVENS, JR.
President

TAXPAYER IDENTIFICATION NUMBER:
_____

_____
MELVIN L. STEVENS, JR., individually

TAXPAYER IDENTIFICATION NUMBER:
_____

S:\CLIENTS\C\Colonial Bank\1466 - Security Financial Enterprises, Inc\1466note.wpd

4



## RECEIPT

Received the original of the attached Note on March 6 , 2007

"BANK"

COLONIAL BANK, N.A.

By: _Debra C. Bennett  Pres_
DEBRA A. BENNETT
Seminole County President/Lending

Branch :FFD,User :FF39        Order: 3310416  Title Officer: MACKESY  Comment:        Station Id :OBCC

MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 06640 Pgs 0153 - 1501 (4pgs)
CLERK'S # 2007046609
RECORDED 03/29/2007 09:56:50 AM
MTG DOC TAX 1,225.00
INTANG TAX 700.00
RECORDING FEES 35.50
RECORDED BY L McKinlay



PREPARED BY AND RETURN TO:
LYNNE R. WILSON, ESQUIRE
SHUFFIELD, LOWMAN & WILSON, P.A.
P.O. Box 1010
Orlando, Florida 32802

## NOTICE OF FUTURE ADVANCE
## MORTGAGE AND NOTE MODIFICATION,
## AND RENEWAL AGREEMENT

THIS NOTICE OF FUTURE ADVANCE MORTGAGE AND NOTE MODIFICATION, AND RENEWAL AGREEMENT (herein "Agreement"), made and entered into this March 14, 2007, by and between MELVIN L. STEVENS, JR., having an address of 180 North Westmonte Drive, Altamonte Springs, Florida 32714 (herein sometimes called the "Mortgagor") and COLONIAL BANK, N.A., having an address of 801 East State Road 434, Longwood, Florida 32750 (herein sometimes called the "Mortgagee" or "Lender").

### R E C I T A L S :

A.   Heretofore, the aforementioned Mortgagor made and executed in favor of Mortgagee that certain Revolving Line of Credit Promissory Note dated June 14, 2002 in the principal amount of $650,000.00, said note being herein referred to as the "Note".

B.   In order to secure the payment of the aforementioned Note, Mortgagor (among other things) made and executed that certain Mortgage and Security Agreement recorded in Official Records Book 4146, page 354, of the Public Records of SEMINOLE County, Florida (herein referred to as the "Mortgage");

The real and personal property, mortgaged by the Mortgage and any modifications thereof is herein referred to as the "Mortgaged Property".

C.   Mortgagor is the fee title owner of the Mortgaged Property (less any portion thereof which has heretofore been released by Mortgagee by a Partial Release of Mortgage recorded in the Public Records of the county in which the Mortgaged Property is located) and none of the Mortgaged Property has been transferred nor has any of same been hypothecated or have liens otherwise been placed thereupon (other than those portions heretofore released of record by Mortgagee); and

D.   Mortgagee is the owner and holder of the Note and Mortgage described above; and

E.   The Mortgagor has requested an additional $350,000.00 loan ("Future Advance") from Mortgagee as a future advance under the Mortgage; and

F.   The parties have agreed to modify the Note to (i) modify the interest and principal payments required to be paid thereunder, and (ii) evidence not only the existing principal balance thereof in the amount of $650,000.00 but to also evidence a future advance of $350,000.00; and

ALL REQUIRED DOCUMENTARY TAXES AND INTANGIBLE TAXES ON $650,000.00 OF THE INDEBTEDNESS WERE PAID ON THAT CERTAIN MORTGAGE RECORDED IN OFFICIAL RECORDS BOOK 4146, PAGE 354, THAT CERTAIN MORTGAGE RECORDED IN OFFICIAL RECORDS BOOK 4367, PAGE 1117, OF THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA, AND THAT CERTAIN MORTGAGE RECORDED IN OFFICIAL RECORDS BOOK 825, PAGE 988, OF THE PUBLIC RECORDS OF JACKSON COUNTY, FLORIDA, AND ALL REQUIRED DOCUMENTARY TAXES AND INTANGIBLE TAXES ON $350,000.00 OF THE INDEBTEDNESS ARE BEING PAID SIMULTANEOUSLY HEREWITH.

S:\CLIENTS\C\Colonial Bank\31466 - Security Financial Enterprises, Inc\31466xxx.mm.wpd

Exhibit
"F"

Branch :FFD,User :FF39          Order: 3310416   Title Officer: MACKESY   Comment:          Station Id :OBCC

G.   The Mortgagor acknowledges that this Agreement confers a substantial benefit upon it and is supported by good and valuable consideration.

NOW THEREFORE, the parties do hereby modify and amend, for good, valuable and sufficient consideration, receipt of which is hereby acknowledged by the undersigned parties, the terms and provisions of the aforementioned Note and Mortgage to the end that it is understood and agreed as follows:

1.   All of the RECITALS hereinabove set forth are by reference incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

2.   The total principal indebtedness secured by the Mortgage shall be the sum of $1,000,000.00, together with any and all other indebtedness set forth in the Mortgage to be secured thereby.

3.   This Mortgage is given to secure not only the existing indebtedness, but also such Future Advances, whether such advances are obligatory or are to be made at the option of Mortgagee, or otherwise, as are made within twenty years from the date hereof, to the same extent as if such Future Advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid principal balance so secured at one time shall not exceed $2,000,000.00, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements.

4.   The Mortgagor hereby acknowledges receipt of $350,000.00 from Mortgagee, as a future advance under the Mortgage, which shall be secured by the Mortgage, as modified as if all indebtedness under the Future Advance was received simultaneously with the execution of the Mortgage.

5.   The terms of the Note are hereby renewed and modified in their entirety as evidenced by that certain Renewal Revolving Line of Credit Promissory Note (the "Renewal Promissory Note") which evidences not only the existing principal balance of the Note (in the amount of $650,000.00) but also the Future Advance of $350,000.00 and which Renewal Promissory Note was executed by the Mortgagor in favor of and delivered to the Mortgagee, in the principal amount of $1,000,000.00, dated of even date herewith, which matures on demand, and which Renewal Promissory Note is made a part hereof by reference as if fully set forth herein, which shall henceforth be the terms of the Note. The Note as renewed and modified in its entirety by the Renewal Promissory Note is herein referred to as the "Promissory Note" or "Note".

6.   Notwithstanding anything contained herein to the contrary:

(a)   all of the Mortgaged Property described shall remain in all respects subject to the lien, charge, security interest and/or encumbrance of the Mortgage; and

(b)   nothing herein contained or done pursuant hereto shall   (i) release, adversely affect, impair or be construed to release, adversely effect or impair the lien, charge, security interest or encumbrance effectuated by the Mortgage or other documents executed in conjunction with the loan evidenced by the Note (herein collectively the "Loan Documents") or the priority thereof over other liens, charges, encumbrances or conveyances;  (ii) release, adversely affect or impair the liability of any party or parties who may now or hereafter be liable under or on account of the Note, Mortgage or other Loan Documents;  (iii) release, adversely affect or impair any grant or lien or security interest, representation in regard to and/or warranty of title heretofore made by the Mortgagor, all of which shall remain in full force and effect and shall inure to the benefit of the Mortgagee and are hereby reaffirmed and regranted and confirmed to the Mortgagee as modified hereby or simultaneously herewith.

Branch :FFD,User :FF39          Order: 3310416   Title Officer: MACKESY   Comment:                    Station Id :OBCC

7.   That all of the other stipulations, terms, provisions and covenants and agreements as contained in the aforesaid Mortgage, Note, and other Loan Documents shall remain in full force and effect except as herein provided to the contrary or modified in conjunction herewith.

8.   This agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

9.   _Waiver of Right to Jury Trial_.  MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING BUT NOT LIMITED TO ANY POST JUDGEMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF,** this Agreement has been signed by each of the undersigned as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

"LENDER" / "MORTGAGEE"

COLONIAL BANK, N.A.

By_____ Pres
   DEBRA A. BENNETT
   Seminole County President/Lending

Print Name: Allison McConnell

Print Name: Lynn Gillespie

Print Name: Allison Ca-sell

MELVIN L. STEVENS, JR., individually

Print Name: Lynn Gillespie

STATE OF FLORIDA
COUNTY OF Seminole

The foregoing instrument was executed, sworn to and acknowledged before me this March 6, 2007, by MELVIN L. STEVENS, JR., individually.

Signature of Notary Public

Name of Notary Public
(Typed, Printed or stamped)

Personally Known ___X___ OR Produced Identification _____
Type of Identification Produced: _____

S:\CLIENT\SC\Colonial Bank\1466 - Society Financial Enterprises, Inc\1466mama.wpd          3

STATE OF FLORIDA
COUNTY OF _Seminole_

The foregoing instrument was acknowledged before me this March _6_, 2007, by DEBRA
A. BENNETT, as Seminole County President/Lending of COLONIAL BANK, N.A., on its behalf.

(SE_____)

_Marguerite Lynn Gillespie_
Signature of Notary Public

_Marguerite Lynn Gillespie_
Name of Notary Public
(Typed, Printed or stamped)

Personally Known ___X___   OR  Produced Identification _____
Type of Identification Produced: _____

S:\CLIENTS\Colonial Bank\1666 – Security Financial Enterprise, Inc.\666mana.wpd          4

STATE OF ALABAMA

MONTGOMERY COUNTY

### CERTIFICATE OF APPROVAL TO CONVERT
### TO A STATE BANKING CORPORATION

I, John D. Harrison, as Superintendent of Banks, State of Alabama, do hereby certify that Colonial Bank, a national banking association, has fully complied with the provisions of § 5-7A-20 through 5-7A-24, Code of Alabama 1975, to convert to a state banking corporation with the name Colonial Bank and that Colonial Bank, the resulting bank, and all of its stockholders, officers and employees shall have the same powers and privileges and shall be subject to the same duties, liabilities and regulations, in all respects, as shall have been prescribed for banking corporations originally organized as banking corporations under the laws of the State of Alabama; and I do, therefore, authorize Colonial Bank, Montgomery, Alabama, subsequent to the filing of this certificate and attached documents with the Judge of Probate of Montgomery County, to transact business as a state banking corporation effective at 5:00 a.m. on Tuesday, June 10, 2008.  I further certify that all proper business can be entrusted to said bank including the ability to exercise trust powers.

Given under my hand and seal of office this the 9th day of June, 2008.

John D. Harrison
Superintendent of Banks

Exhibit
"G"

MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 07275 Pgs 1057 - 1058;   (2pgs)
CLERK'S # 2009120038
RECORDED 10/28/2009 02:51:16 PM
RECORDING FEES 18.50
RECORDED BY T Smith

When Recorded Return to:

Leisa DeSimone
Branch Banking and Trust
100 Colonial Bank Blvd
Building B – Third Floor
Montgomery, AL 36117

----------------------------------------------For Recorder's Use----------------------------------------------

State of Florida
County of _____Seminole_____;

## ASSIGNMENT OF SECURITY INSTRUMENTS
## AND OTHER LOAN DOCUMENTS

KNOW ALL PERSONS BY THESE PRESENTS:   That the **FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for Colonial Bank** ("Assignor"), by virtue of its appointment by the Alabama Superintendent of Banks for the State of Alabama as receiver to liquidate and distribute the assets of Colonial Bank as set forth in that certain Certificate of Appointment dated August 14, 2009 and filed in the Office of the Judge of Probate of Montgomery County, Alabama on the 17th day of August, 2009 and recorded at Real Property Book 03936, Pages 534-536 (which is attached hereto as Exhibit A), for and in consideration of the sum of **TEN AND NO/100 DOLLARS ($10.00)**,   and other good and valuable consideration received from or on behalf of **Branch Banking and Trust Company**, a North Carolina banking corporation, ("Assignee"), the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto Assignee all of Assignor's rights, title and interests in and to all those certain Mortgages, Security Deeds, Deeds to Secure Debt, Deeds of Trust, Assignments of Rents and Leases, UCC-1 financing statements, judgment liens, and all such other instruments and security agreements securing loans owned by Colonial Bank and held of record by Colonial Bank or any of its predecessors as of August 14, 2009 in the Public Records of the counties of the State of Florida and all modifications, extensions, amendments and renewals thereto (collectively the "Security Instruments"), however, expressly excluding from the definition of Security Instruments all Mortgages, Security Deeds, Deeds to Secure Debt, Debts of Trust and such other instruments registered under or by use of Mortgage, Electronic Registration Systems, Inc. ("MERS") regardless of Colonial Bank's ownership or beneficial interest therein.

Assignor does further grant, bargain, sell, assign, transfer and set over unto Assignee all of Assignor's rights, title and interests in and to the promissory notes, loan documents and all other indebtedness secured by the Security Instruments, as evidenced by related promissory notes, any and all loan agreements, pledges, security agreements and UCC financing statements and all modifications, extensions, amendments and renewals to said documents and instruments together with any and all other loan documents, title policies and casualty insurance policies evidencing, securing or relating to any of the foregoing all of which have been delivered to the Assignee.

Exhibit
"H"

For purposes of clarification it is the intent of Assignor to convey to Assignee all interests of Colonial Bank in all Security Instruments existing of record as of August 14, 2009 and held by Assignor as receiver for Colonial Bank.

**TO HAVE AND TO HOLD** the same unto Assignee and its legal representatives, successors and assigns forever. This assignment is made as-is, without recourse, warranty or representation of any nature or kind whatsoever, whether express or implied.

**IN WITNESS WHEREOF,** this Assignment of Security Instruments is executed this the 19 day of October, 2009, to be deemed effective as of the 14th day of August, 2009.

Signed, sealed and delivered in our presence:

FEDERAL DESPOIT INSURANCE CORPORATION, as Receiver for Colonial Bank, an Alabama banking corporation.

Print name   CHRISTNE HUNTER

By _Heidi M. Gillespie_
Printed Name: _Heidi M. Gillespie_
Its: Attorney-in-fact

Print name   Amanda Gantt

STATE OF ALABAMA          )
                          :  ss.
COUNTY OF MONTGOMERY      )

Personally appeared before me, the undersigned authority in and for the said county and state, on this 19 day of October 2009, within my jurisdiction, the within named Heidi Gillespie who acknowledged that s/he is Attorney-in-fact of the Federal Deposit Insurance Corporation, and that for and on behalf of the said Federal Deposit Insurance Corporation, as Receiver for Colonial Bank, and as its act and deed s/he executed the above and foregoing instrument, after first having been duly authorized so to do.

_Kelly Breeding_
Signature of person taking acknowledgment

_Kathy Breeding_
Name of acknowledger typed, printed or stamped
Notary Public

My Commission Expires: _____

This Instrument Prepared By:
Richard A. Wright, Esq.
Jones, Walker, Waechter, Poitevent,
    Carrère & Denègre, L.L.P.
Post Office Box 46
Mobile, AL 36601

RLPY 03936 PAGE 0534



## STATE OF ALABAMA
### STATE BANKING DEPARTMENT



Bob Riley
Governor

John D. Harrison
Superintendent of Banks

STATE OF ALABAMA
MONTGOMERY COUNTY

I, John D. Harrison, Superintendent of Banks, under my hand and official seal and pursuant to Section 5-8A-24, Code of Alabama, 1975, hereby appoint the Federal Deposit Insurance Corporation, as receiver to liquidate and distribute the assets of Colonial Bank, with its principal place of business being in Montgomery, Montgomery County, Alabama.

I further direct that this Certificate of Appointment is to be filed in the Office of the Superintendent of Banks and that a certified copy of this Certificate of Appointment is to be filed in the Office of the Judge of Probate of Montgomery County, Alabama.

IN WITNESS WHEREOF, I have hereunto set my hand and the official seal of the State Banking Department on this the 14th day of August, 2009.



John D. Harrison
Superintendent of Banks
State of Alabama

SBD-105

CENTER FOR COMMERCE • 401 ADAMS AVENUE • P.O. BOX 4600 • MONTGOMERY, AL 36103-4600
TELEPHONE (334) 242-3452 • FAX (334) 242-3500 OR BUREAU OF LOANS (334) 353-5961

RLPY 03936 PAGE 0535

 FDIC
Division of Resolutions and Receiverships
Dallas Regional Office
1601 Bryan Street
Dallas, Texas 75201                           Telephone (214) 754-0098

August 14, 2009

John D. Harrison
Superintendent of Banks
State of Alabama
State Banking Department
401 Adams Ave., Suite 680
Montgomery, AL 36104

Subject:    Colonial Bank
            Montgomery, Alabama– In Receivership
            Acceptance of Appointment as Receiver

Dear Sir or Madam:

Please be advised that the Federal Deposit Insurance Corporation accepts its appointment as Receiver of
the captioned depository institution, in accordance with the Federal Deposit Insurance Act, as amended.

Sincerely,

FEDERAL DEPOSIT INSURANCE CORPORATION

By: _____
    Robert C. Schoppe
    Receiver-in-Charge

H:01-b LUCMFI/Accept Appointment as Receiver.doc                    04/08

RLPY 03936 PAGE 0536

         STATE OF ALABAMA
          STATE BANKING DEPARTMENT         

TO WHOM IT MAY CONCERN:

    I hereby certify that the attached is a true and correct copy of the Superintendent's

certificate appointing the Federal Deposit Insurance Corporation as receiver to liquidate and

distribute the assets of Colonial Bank, with its principal place of business being in Montgomery,

Montgomery County, Alabama.

    Given under my hand this the 17th day of August 2009.

                          Elizabeth T. Bressler
                          General Counsel
                          State of Alabama
                          State Banking Department

CERTIFIED COPY
I hereby certify this document was filed in
Montgomery County, Alabama on _____ in
Book RLPY 03936
Page 0534-0536
            Judge of Probate

STATE OF ALA
MONTGOMERY CO
I CERTIFY THIS INSTRUMENT
WAS FILED ON
RLPY 03936 PG 0534-0536 2009 Aug 17
09:53AM
REESE MCKINNEY JR.
JUDGE OF PROBATE

| INDEX | $6.00 |
| REC FEE | $7.50 |
| CERT | $1.00 |
| CASH TOTAL | $13.50 |
| 107133 | Clerk: SHAUNTE 09:54AM |

SBD-107

CENTER FOR COMMERCE • 401 ADAMS AVENUE • P.O. BOX 4600 • MONTGOMERY, AL 36103-4600
TELEPHONE (334) 242-3452 • FAX (334) 242-3500 OR BUREAU OF LOANS (334) 353-5961

## LIMITED POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that the FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation organized and existing under an Act of Congress, hereafter called the "FDIC", hereby designates the individual(s) of BB&T, set out below (the "Attorney(s)-in-Fact") for the sole purpose of executing the documents outlined below:

Jeanne Martin, SVP Manager of AL/GA Loan Administration
Laura McKinney, Regional Loan Administration Manager II
Gregory E. Beavers, Servicing Manager
Pat Padilla, Regional Loan Administration Manager II
Lisa Best, Loan Operations Manager III
Robert Hensley, Consumer Lending Manager II
Angela Harper, Senior Vice President
Teresa Griswold, Senior Vice President
Heidi Gillespie, Senior Vice President

WHEREAS, the undersigned has full authority to execute this instrument on behalf of the FDIC under applicable Resolutions of the FDIC's Board of Directors and redelegations thereof.

NOW THEREFORE, the FDIC grants to the above-named Attorney(s)-in-Fact the authority, subject to the limitations herein, as follows:

1.      To execute, acknowledge, seal and deliver on behalf of the FDIC as Receiver of Colonial Bank, all instruments of transfer and conveyance, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits and supporting documents as may be necessary or appropriate to evidence the sale and transfer of any asset of Colonial Bank, including all loans held by Colonial Bank to BB&T, pursuant to that certain Purchase and Assumption Agreement, dated as of August 14, 2009, between FDIC as Receiver of Colonial Bank and BB&T.

The form which the Attorney(s)-in-Fact shall use for endorsing promissory notes or preparing allonges to promissory notes is as follows:

Pay to the order of

_____

Without Recourse

FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for Colonial Bank, Montgomery, Alabama

By: _____

Name: _____
Title:  Attorney-in-Fact

Limited Power of Attorney for BB&T

Page 1 of 3
August, 2009

RLPY 03952 PAGE 0837

All other documents of assignment, conveyance or transfer shall contain this sentence: "This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver."

2.   FDIC further grants to each Attorney-in-Fact full power and authority to do and perform all acts necessary to carry into effect the powers granted by this Limited Power of Attorney as fully as FDIC might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for.

This Limited Power of Attorney shall be effective from August 14, 2009 and shall continue in full force and effect through August 14, 2010, unless otherwise terminated by an official of the FDIC authorized to do so by the Board of Directors ("Revocation"). At such time this Limited Power of Attorney will be automatically revoked. Any third party may rely upon this document as the named individual(s)' authority to continue to exercise the powers herein granted unless a Revocation has been recorded in the public records of the jurisdiction where this Limited Power of Attorney has been recorded, or unless a third party has received actual notice of a Revocation.

IN WITNESS WHEREOF, the FDIC, by its duly authorized officer empowered by appropriate resolution of its Board of Directors, has caused these presents to be subscribed in its name this 26 day of August, 2009.

FEDERAL DEPOSIT INSURANCE CORPORATION

By: _Janice S. Hearn_

Name: Janice S. Hearn
Title: Manager of Customer Service
Dallas Regional Office

(CORPORATE SEAL)   ATTEST: _Walter C. Siedentopf_

Name: Walter C. Siedentopf
Title: Attorney

Signed, sealed and delivered
in the presence of:

_Shirley L. Walker_
Witness
Name:   Shirley L. Walker

_Tawanta L. Brinson_
Witness
Name:   Tawanta L. Brinson

Limited Power of Attorney for BB&T

Page 2 of 3
August, 2009

RLPY 03952 PAGE 0838

STATE OF TEXAS

COUNTY OF DALLAS

On this 28 day of August, 2009, before me, a Notary Public in and for the State of Texas appeared Janice S. Hearn, to me personally known, who, being by me first duly sworn did depose that she is Manager of Customer Service, Dallas Regional Office of the Federal Deposit Insurance Corporation (the "Corporation"), in whose name the foregoing Limited Power of Attorney was executed and subscribed, and the said Limited Power of Attorney was executed and subscribed on behalf of the said Corporation by due authority of the Corporation's Board of Directors, and the said Janice S. Hearn, acknowledged the said Limited Power of Attorney to be the free act and deed of said Corporation.

Notary Public
My Commission expires: 12/17/2012

LAKEISHA VRAIDAWN SMITH
MY COMMISSION EXPIRES
December 17, 2012

UNITED STATES OF AMERICA

DISTRICT OF COLUMBIA

On this 31 day of August, 2009, before me, Notary Public in and for the District of Columbia, personally appeared Walter C. Siedentopf, to me known personally, who being by me first duly sworn did depose that he is an Attorney, of the Federal Deposit Insurance Corporation, at the Corporation in whose name the foregoing Power of Attorney has been subscribed, who further said that the seal affixed to the said Power of Attorney is the corporate seal of the said Federal Deposit Insurance Corporation, and that the said Power of Attorney was subscribed on behalf of the said Corporation and its seal thereto affixed by due authority of the Corporation's Board of Directors, and the said Walter C. Siedentopf, acknowledged the said Power of Attorney to be the free act and deed of the said Corporation.



STATE OF ALA.MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
RLPY 03952 PG 0836-0838 2009 Oct 01 02:28PM
REESE MCKINNEY JR
JUDGE OF PROBATE

| | |
|---|---|
| INDEX | $5.00 |
| REC FEE | $7.50 |
| CERT | $1.00 |
| VISA TOTAL | $13.50 |
| 109965 | Clerk SHAUNTE 02:29PM |

Notary Public, District of Columbia                    Ann Laterra
United States of America                          SEPTEMBER 14, 2010
My Commission expires:

Limited Power of Attorney for BB&T

Page 3 of 3
August, 2009



Branch Banking & Trust Co.

5431 E. Silver Springs Blvd., Unit 1
Silver Springs, FL 34488

April 25, 2016

**VIA REGULAR MAIL AND CERTIFIED MAIL**

Melvin L. Stevns, Jr.
299 Torpoint Gate Road
Longwood, FL 32779

Melvin L. Stevens, Jr.
129 Habersham Drive
Longwood, FL 32779

Melvin L. Stevens, Jr.
323 E. Notre Dame Drive
Altamonte Springs, FL 32714

Melvin L. Stevens, Jr.
724 Silversmith Circle
Lake Mary, FL 32746

Melvin L. Stevens, Jr.
5684 Reddoch Road
Marianna, FL 32460

Re:  Renewal Revolving Line of Credit Promissory Note and Mortgages
Originally with Colonial Bank, Now Owned by Branch Banking and
Trust Company Pursuant to Assignment from the FDIC (Loan Number
▇▇▇▇▇▇▇▇(the "Loan").

Dear Mr. Stevens:

As you know, BB&T is the owner of the Loan as assignee from the FDIC.   You are
in default of the Loan for failing to pay your monthly interest payments from June, 2009,
through the payment that was due on April 7, 2016.  As of the date of this letter, the past due
interest amount is $317,046.32, and the amount necessary to cure the default (the "Cure
Amount") is $317,046.32.  BB&T demands that you pay the Cure Amount to BB&T on or
before May 31, 2016.   Your failure to cure the default on or before May 31, 2016, may result
in acceleration of the sums secured by the mortgages, foreclosure by judicial proceeding, and
sales of the mortgaged properties.  You will have the right to reinstate the Loan after
acceleration and the right to assert in the foreclosure proceeding the non-existence of a
default or any other defenses to acceleration and foreclosure.

Sincerely,

Tara Bromirski

Exhibit
"I"



Branch Banking and Trust Company

June 3, 2016

1200 Brickell Avenue 19th Floor
Miami, FL 33131

<u>VIA FIRST CLASS U.S. MAIL AND CERTIFIED MAIL</u>

Melvin L. Stevens, Jr.                          Melvin L. Stevens, Jr.
299 Torpoint Gate Road                    129 Habersham Drive
Longwood, FL 32779                         Longwood, FL 32779

Melvin L. Stevens, Jr.                          Melvin L. Stevens, Jr.
323 E. Notre Dame Drive                   724 Silversmith Circle
Altamonte Springs, FL 32714            Lake Mary, FL 32746

Melvin L. Stevens, Jr.                          Security Financial Enterprises, Inc.
5684 Reddoch Road                            c/o Melvin L. Stevens, Jr.
Marianna, FL 32460                            299 Torpoint Gate Road
                                                          Longwood, FL 32779

Re:     Renewal Revolving Line of Credit Promissory Note and Mortgages
          Originally with Colonial Bank, Now Owned by Branch Banking and
          Trust Company Pursuant to Assignment from the FDIC (Loan Number
          ▓▓▓▓▓▓▓▓) (the "Loan").

Dear Mr. Stevens:

       As you know, BB&T is the owner of the Loan as assignee from the FDIC.   You are
in default of the Loan pursuant to paragraph 17 of the Mortgages by transferring your
interests in the mortgaged properties as follows:

       129 Habersham Drive, Longwood, FL:   Deed to 3 MMM Holdings recorded on
       11/30/15;

       724 Silversmith Circle, Lake Mary, FL:   Deed to 3 MMM Holdings recorded on
       11/30/15;

       323 Notre Dame Drive, Altamonte Springs, FL:   Deed to 3 MMM Holdings recorded
       on 11/30/15;

       Jackson Property Vacant Ranch Land:   Deed to 3 MMM Holdings recorded on
       2/23/15.

       As a result of your default, BB&T has accelerated payment of the remaining
indebtedness owing under the Loan.   As of the date of this letter, you owe Lender the
following amounts (the "Payoff Amount"):

Exhibit
"J"

| | |
|---|---|
| Principal: | $ 999,965.75 |
| Interest: | $ 321,841.23 |
| Real Estate Taxes: | $  19,186.37 |
| Forced Place Insurance: | $  21,411.41 |
| Total: | $1,362,404.76 |

Interest accrues on the unpaid principal at the contract rate of $122.95 per day.

Pursuant to paragraph 17 of the Mortgages, BB&T demands payment from Mr. Stevens of the Payoff Amount by **July 12, 2016.**

Additionally, the Loan is payable on demand. BB&T demands that Mr. Stevens and Security Financial Enterprises, Inc., pay the Payoff Amount by **July 12, 2016.**

BB&T reserves the right to charge default interest as provided in the Loan if the Payoff Amount is not received by July 12, 2016. If the Payoff Amount is not received, default interest will begin to accrue on July 13, 2016.

## NO WAIVER/RESERVATION OF RIGHTS

This written notice does not constitute a waiver of any other rights or remedies which BB&T may have pursuant to the terms of the Loan or otherwise. No failure to exercise any rights or remedies available to BB&T and no delay in exercising any such rights or remedies shall operate as a waiver of any rights which BB&T may have pursuant to the terms of the mortgages or otherwise. Further, any reference by the undersigned on behalf of BB&T to any defaults mentioned herein shall in no way constitute, or be construed to be, a waiver of any other default which may now exist or hereafter arise under the loan.

The acceptance by BB&T of any payments from you, to the extent that they do not represent the complete Payoff Amount, shall not constitute a waiver by BB&T of any defaults that exist under the Loan.

Lender shall not be bound by any verbal representations related in any manner to the Loan or this demand. No amendments, modifications, requests for forbearance, or any other agreement whatsoever related to the mortgages shall be valid or binding on Lender unless it is memorialized in a writing signed

Sincerely,

*Tara Bromirski*

Tara Bromirski

2